# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DENNIS EDWARD ARENDT,

    Plaintiff,

    v.                                                                             Case No. 08-C-0906

MICHAEL J. ASTRUE,
  Commissioner of the
  Social Security Administration,

    Defendant.

## DECISION AND ORDER

### NATURE OF CASE

The plaintiff, Dennis Edward Arendt, commenced this action on October 24, 2008, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g).[1] The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

### PROCEDURAL HISTORY

On December 10, 2004, the plaintiff filed an application for disability insurance benefits, alleging that he became disabled on November 15, 2004, due to right radial syndrome, Crohn's disease, rumination syndrome, cholecystitis, right lateral epieondylitis, gastritis, esophagitis and cervical degenerative disc disease. The plaintiff's application was denied initially and upon

---

[1] The plaintiff also filed an application for supplemental security income (SSI) which was denied. See Tr. 709-16.

reconsideration. Pursuant to the plaintiff's request, the Administrative Law Judge (ALJ) held a video hearing on March 5, 2008. The plaintiff, who was represented by counsel, appeared and testified. Jacquelyn E. Wenkman, a vocational expert, also testified at the hearing.

The ALJ concluded that the plaintiff has not been under a disability as defined in the Social Security Act from November 15, 2004, through the date of her decision. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

The history of this case is well summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## **APPLICABLE LAW**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a plaintiff must demonstrate that her physical or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment which exists in the national economy considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently unemployed; 2) whether the plaintiff has a severe impairment; 3) whether his impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff possesses the residual functional capacity

-2-

(RFC) to perform his past relevant work; and 5) whether the plaintiff is capable of performing any other work existing in significant numbers in the national economy given his age, education, and work experience. See Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-23 (7th Cir. 1993). If a plaintiff satisfies steps one, two and three, he will automatically be found disabled. If a plaintiff satisfies steps one and two, but not three, then he must demonstrate that he lacks the residual functional capacity to perform his past work. The plaintiff bears the burden at steps one through four. Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005). Once step four is satisfied, the burden shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy. Briscoe, 425 F.3d at 352; Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004); Knight, 55 F.3d at 313. The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (his maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his vocationally relevant past work.

Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Haynes v. Barnhart, 416 F.3d

-3-

621, 627 (7th Cir. 2005). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Id. at 627-28.

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work he is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Scheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008) (quoting Barnett v. Barnhart, 381 F.3d 664, 668 [7th Cir. 2004]). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blakes v. Barnhart,

-4-

331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## **ANALYSIS**

The plaintiff, who is now proceeding pro se, asserts that the Social Security Administration failed to properly gather all of the medical documentation needed for the ALJ to make a fair decision. The plaintiff states that the SSA recently asked him to undergo a physical examination by Dr. Tom Leonard which he did in February of 2009.[2] The plaintiff further states that Dr. Leonard diagnosed him with peripheral neuropathy, "a very disabling disease." (Plaintiff's Brief at 2). The plaintiff asks the court to reverse the ALJ's decision based upon this new evidence.

Although an ALJ must develop a complete record, "the difficulty is that no record is 'complete.'" Kendrick v. Shalala, 998 F.2d 455, 456 (7th Cir. 1993). Generally, the court must respect the ALJ's reasoned judgment on how much evidence to gather. Id. at 458. Moreover, as the plaintiff was represented by counsel during the hearing, the ALJ was entitled to presume

---

[2] The plaintiff states that the examination took place on February 17, 2009. The disability report, however, is dated February 23, 2009.

-5-

that he had made his best case. Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988). The plaintiff provides no reason why such a presumption should not have been made in this case. Moreover, there is no suggestion that the ALJ ignored or failed to receive medical evidence on a condition affecting the plaintiff's ability to work. The ALJ took into consideration the problems the plaintiff has with his right arm including pain and weakness in concluding that the plaintiff had not been under a disability, as defined in the Social Security Act, from November 15, 2005, through April 4, 2008, the date of the decision.

In the April 4, 2008, decision, the ALJ found that the plaintiff had not engaged in substantial gainful activity since November 15, 2004. The ALJ further found that the plaintiff had the following severe combination of impairments: right radial syndrome, Crohn's disease, rumination syndrome, cholecystitis, right lateral epicondylitis, gastritis, esophagitis and cervical degenerative disc disease. However, the ALJ also found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In addition, the ALJ found that the plaintiff, who is defined as a younger individual, has the residual functional capacity (RFC) to perform a sedentary exertional level of work involving no more than frequent right hand use and no overhead reaching or prolonged walking.

"Residual functional capacity" is that which a claimant can still do despite his physical and mental limitations. Liskowitz v. Astrue, 559 F.3d 736, 740 (7th Cir. 2009) (citing Hickman v. Apfel, 187 F.3d 683, 689 [7th Cir. 1999]); 20 C.F.R. § 404.1545(a). In making her RFC finding, the ALJ considered the medical evidence of record as well as the plaintiff's testimony regarding his symptoms and activities.

-6-

Case 1:08-cv-00906-PJG   Filed 09/30/09   Page 6 of 15   Document 25

The plaintiff testified that he lived with his wife and three children. He further testified that his wife ran a daycare for three children in their home and that he transported the children from their homes to his home in the morning. (Tr. 728). The plaintiff testified that his wife worked outside the home in 2008 and that his daughters, one of whom was disabled, "babysat" the children in the daycare. (Tr. 730-32). The plaintiff's daughters were home schooled, which the plaintiff assisted with. (Tr. 729, 737-38). Additionally, the plaintiff testified that he prepared quick meals and helped with dishes, laundry, and vacuuming. (Tr. 733). He also went to the movies, visited friends, played board games and a computer game. (Tr. 734-736). He assisted his children with taking medication, but stated that they mostly cared for themselves. (Tr. 738-39). The plaintiff, who was right arm dominant, testified he had pain and weakness in his right arm. (Tr. 742-43). He also testified he vomited with exertion such as fast walking and lifting. (Tr. 743-44).

The medical evidence of record is summarized as follows. Between late November and December 2004, the plaintiff underwent an extensive work-up with his primary care clinic for complaints of abdominal pain, occasional vomiting, and weight loss. (Tr. 98-99, 149-64). He has had several studies, including CT scans of the chest, abdomen, and pelvis, a brain MRI, a bone study, a small bowel study, and an ultrasound all of which revealed no significant abnormalities. (Tr. 98-105). In January 2005, the plaintiff had his gallbladder removed, (Tr. 150, 188-89). A cervical spine MRI conducted in January 2005 showed relatively mild degenerative changes in the cervical spine, but no evidence of focal protrusion or nerve impingement. (Tr. 93-94).

After examining the plaintiff on January 24, 2005, Shawn Hennigan, M.D., opined that the plaintiff was limited to sedentary work, lifting five pounds maximum, for the next month. (Tr.

-7-

269, 271). On February 12, 2005, the plaintiff sought emergency room (ER) treatment for neck pain. (Tr. 115-16). The ER doctor diagnosed chronic neck pain with an acute exacerbation after chiropractic care and discharged the plaintiff home in stable condition.

On a follow-up conducted two days later, the plaintiff had fair range of neck motion, no tenderness over the cervical spine, and no neurologic symptoms. (Tr. 147-48). He was diagnosed with neck strain, prescribed a muscle relaxant, and it was recommended that he stay "away from the chiropractor at this point." (Tr. 147). He was referred to a neurosurgeon at his request, although the referrer "did not feel there is any requirement for surgery." (Tr. 147).

The neurosurgeon, Richard Morrison, M.D., stated that the plaintiff's motor examination revealed normal tone with full power and no atrophy. (Tr. 117-18). Sensory examination was intact, reflexes were normal at 2/4, and symmetric. The plaintiff had no spasm of the paraspinous muscles. His right arm appeared normal with no tenderness and good range of motion of his elbow and his shoulder. Dr. Morrison reviewed the MRI and reported that the plaintiff's cervical spine "did show very modest degenerative changes possible at C6-7 with minimal uncovertebral joint compression." (Tr. 118). Dr. Morrison did not think the plaintiff's symptoms "are at all contributed by any cervical radiculopathy." Id. The plaintiff was to continue conservative care.

In February 2005, the plaintiff saw William A. Faubion, M.D., a Mayo Clinic gastroenterologist. Dr. Faubion stated that the plaintiff's work-up was all normal. (Tr. 119-20). He said the plaintiff's Crohn's disease diagnosis was based on a blood test, but did not correlate clinically. He opined that the plaintiff's vomiting was likely rumination syndrome and recommended biofeedback breathing exercises.

-8-

On March 17, 2005, the plaintiff saw Angela Haliburda, D.O., for evaluation of his right arm pain. (Tr. 126-27). On examination, the plaintiff had good range of motion of the upper extremities bilaterally. He had good spinal ranges of motion, no tenderness to palpation along the axial spine, and normal motor strength, reflexes, and sensation in the upper extremities bilaterally. He had good wrist and arm ranges of motion and good sensation. Dr. Haliburda said the plaintiff's pain was of unknown origin and prescribed medication.

On March 24, 2005, Merle L. Teetzen, M.D., saw the plaintiff for an evaluation of pain in his right arm. Dr. Teetzen reported that the plaintiff had intact sensation, no atrophy, normal strength, normal gait. (Tr. 144-46). Flexion and extension of the neck were not limited or painful. Dr. Teetzen diagnosed radial tunnel syndrome (resistant tennis elbow) and advised getting a second opinion.

Later that month, Steven Schmidt, M.D., a hand surgeon, also diagnosed radial tunnel type syndrome which was first treated with hand therapy and then surgery. (Tr. 166-72). The plaintiff's radial nerve function remained intact and he had full range of motion at the elbow. After surgery, Dr. Schmidt recommended more strengthening therapy. Also in March 2005, state agency physician Mina Khorshidl, M.D., reviewed the record and opined the plaintiff could perform up to medium level work. (Tr. 26, 128-35, 707).

At a follow-up exam in April 2005, Ravi Kondaveeti, M.D., reported that the plaintiff "looks pretty good and feels pretty healthy at present." (Tr. 143). Medication controlled his abdominal pain and diarrhea. In May 2005, Roderick Meves, M.D., said he was not sure why the plaintiff was pursuing disability at that time. (Tr. 141-42). He suggested an additional medication trial for vomiting, to be taken before work or strain. Also in May 2005, Dr. Teetzen opined that it was

-9-

uncertain when the plaintiff would be able to return to work full time, as the doctor felt pain limited the plaintiff's right arm motion and exertion. (Tr. 275-76).

In June 2005, Clifford Pukel, M.D., wrote a letter to the Wisconsin Department of Workforce Development stating that the plaintiff had some gastroenterological inflammatory disease. (Tr. 136-37). He indicated the plaintiff could return to work full time as of August 7, 2005,[3] subject to limitations, which he said a rehabilitation or occupational therapy physician could determine. (Tr. 138). The next month, Dr. Schmidt said the plaintiff was still unable to use his right hand or arm to work, and that the date when he may be able to use his right hand or arm to work was still uncertain. (Tr. 629-31).

In September 2005, the plaintiff underwent a physical work performance evaluation with an occupational therapist. (Tr. 508-09). The therapist said she thought the plaintiff had abilities to sit constantly, stand frequently, walk and climb stairs occasionally, and balance on level surfaces adequately. (Tr. 508). She said he was tested on all sedentary activities and did not vomit during the evaluation as long as he could control the rate of speed at which he worked. (Tr. 509). The therapist said the plaintiff did not demonstrate sufficient tolerances for an eight-hour day at that time. (Tr. 509).

That same month, a doctor opined that the plaintiff could perform full-time light work, but that he should not return to his previous work. (Tr. 506-07). The doctor recommended that the plaintiff be referred for vocational rehabilitation.

Also in September 2005, the plaintiff underwent a consultative examination with Ronald A. Barnes, M.D., who said the plaintiff appeared healthy, but had significant loss of motor

---

[3] Dr. Pukel's report actually lists 8/7/4 as the date the plaintiff would be able to return to work. That appears to be a typographical error, however.

strength of the right forearm and hand, and some muscle edema of the right forearm. (Tr. 208-16). Sensation, reflexes, and right elbow range of motion was all normal. Dr. Barnes diagnosed radial tunnel syndrome of the right elbow, with loss of motor strength. He also diagnosed Crohn's disease, according to medical documentation and nausea and vomiting with increased activity. He thought the plaintiff's loss of muscle strength in the right forearm and wrist "may gradually improve over time with increased strengthening of the right hand." (Tr. 213). Dr. Barnes said the plaintiff's high level of perceived disability was "not consistent with his presentation." Id. Dr. Barnes opined that the plaintiff could perform light work on a full time basis. He advised avoiding forceful gripping, pushing, and pulling on a repetitive basis with the right upper extremity. He also advised caution with overhead reaching or lifting with the right arm.

In October 2005, a state agency physician, Pat Chan, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment. (Tr. 220-27, 708). He concluded that the plaintiff could perform a range of light work with limitation to occasional reaching overhead on the right due to radial tunnel syndrome.

In December 2006, Dr. Teetzen, who noted he had examined the plaintiff previously in August 2004, reported that the plaintiff had right upper extremity impairments, with significant weakness at the hand in terms of power of grasp and three-point pinch. (Tr. 679-81). The plaintiff also had some milder and almost generalized weakness of the right upper extremity compared to the left. Dr. Teetzen said the plaintiff's findings indicated there was more than involvement of the radial nerve in producing the weakness. Dr. Teetzen said the plaintiff's findings were complex, but, with his sensory symptoms, pointed to involvement of more than one peripheral nerve. He said he did not have a definitive explanation as to the cause of the

-11-

plaintiff's symptoms. He said the plaintiff's vomiting with exertion was his most limiting symptom since he had to do everything in slow motion and with minimal exertion.

Also in December 2006, Dr. Schmidt said there was no significant change in the plaintiff's right hand function. (Tr. 687). Dr. Schmidt said the plaintiff had permanent disability to the right arm but deferred to Dr. Barnes's evaluation in that respect. In January 2007, Dr. Teetzen said the plaintiff's permanent disability consisted of paresthesias and weakness of the right upper extremity, slowness of movement, and vomiting in exertion. (Tr. 697).

An individual is disabled only if he "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden of showing that there are a significant number of jobs that the claimant is capable of performing and typically uses a vocational expert to assess meet that burden. Liskowitz, 559 F.3d at 743 (citing 20 C.F.R. § 404.1560[c][2]; Britton v. Astrue, 521 F.3d 799, 803 [7th Cir. 2008] [per curiam]; Lee v. Sullivan, 988 F.2d 789, 793 [7th Cir. 1993]).

At the administrative hearing, the ALJ asked the vocational expert whether any jobs could be performed by an individual of the plaintiff's age, education, and work experience, if that individual could perform sedentary work with only occasional climbing and stooping, kneeling, crawling, balancing, and crouching; no prolonged walking; no overhead reaching with the right upper extremity; and the ability to use the right upper extremity on a frequent, but not constant basis. (Tr. 754-55). The vocational expert testified that such an individual could perform 2,329 security jobs; 695 interviewers jobs; 2,143 receptionist jobs; 765 information person jobs; and

-12-

1,200 general office clerk jobs in the state of Wisconsin. (Tr. 754). It is "well-established that 1,000 jobs is a significant number." Liskowitz, 559 F.3d at 743 (citing cases).

Relying on this testimony and the medical evidence in the record, the ALJ concluded that the plaintiff could perform a significant number of jobs existing in Wisconsin despite his limitations. Thus, the ALJ determined that the plaintiff was not disabled. Substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled.

Nevertheless, the plaintiff asks the court to reverse the ALJ's decision based on a February 2009 examination by Dr. Leonard. Although the court cannot reverse the ALJ's decision based on new evidence, it could remand the case pursuant to sentence six of 42 U.S.C. § 405(g). The sixth sentence of 42 U.S.C. § 405(g) provides:

> the district court may . . . remand the case to the Commissioner of Social Security for further action . . . and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir. 2005).

Accordingly, a remand is appropriate only when the new evidence is material to the "condition during the relevant time period encompassed by the application under review, and there is good cause for not introducing the evidence during the administrative proceedings." Id. at 743 (quoting Anderson v. Bowen, 868 F.2d 921, 927 [7th Cir. 1989]). "[M]edical records 'postdating the hearing' and that 'speak only to the [applicant's] current condition, not to his

-13-

condition at the time his application was under consideration by the Social Security Administration' do not meet the standard for new and material evidence." Schmidt, 395 F.3d at 741 (quoting Kapusta v. Sullivan, 900 F.2d 94, 97 [7th Cir. 1989]); see also, Godsey v. Bowen, 832 F.2d 443, 445 (7th Cir. 1987) ("The evidence here was immaterial . . . since the fact that her condition had deteriorated by 1986 does not show that in 1983 it was otherwise than found at the administrative hearing."); Anderson, 868 F.2d at 927 (7th Cir. 1989) (remand is appropriate only where the new evidence is "material to the claimant's condition during the relevant time period encompassed by the disability application under review"); 20 C.F.R. § 404.970(b)(Appeals Council will consider new and material evidence "if it relates to the period on or before the date of the administrative law judge hearing decision.").

The ALJ issued her decision in this case on April 4, 2008. The physical examination and diagnosis by Dr. Leonard was in February 2009, nearly one year after the ALJ issued her decision. Thus, although Dr. Leonard's disability report is "new" evidence, it does not constitute "material" evidence for purposes of a remand pursuant to 42 U.S.C. § 405(g). Evidence is material only to the extent it could have affected the outcome of an ALJ's decision and a report documenting the plaintiff's medical condition as it existed in February 2009 could not have affected the ALJ's April 4, 2008, decision. Accordingly, the plaintiff has not established grounds for a sentence six remand and, therefore, his request for a remand pursuant to sentence six is denied.

In sum, the ALJ's decision is supported by substantial evidence. Therefore, the plaintiff's appeal will be denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this case be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of September, 2009.

BY THE COURT:

    s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge